IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIO MARQUEZ,

                Petitioner,

  vs.

SCOTT P. RAWERS, Warden,

                Respondent.

CV-F-03-6508 OWW WMW HC

FINDINGS AND RECOMMENDATIONS RE PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302.

**PROCEDURAL HISTORY**

Petitioner is serving a term of fifteen years to life plus a one-year deadly weapon enhancement, imposed by the Contra Costa Superior Court following a conviction of second degree murder. He was sentenced on November 18, 1980.

On October 22, 2002, the California Board of Prison Terms ("the Board") found Petitioner suitable for parole, with an effective date of February 19, 2003. On review, the Governor reversed the Board's decision on March 21, 2003.

**LEGAL STANDARD**

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004); Sass v. California Board of Prison Terms, 376 F.Supp.2d 975 (E.D. Cal.2005); see 28 U.S.C. § 2254(a) (This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade,  538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant

state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

//

II. Subject Matter Jurisdiction

Petitioner contends that his federal constitutional rights were violated, and he was deprived of liberty without due process of law, when Governor Gray Davis reversed the Board's decision finding Petitioner eligible for parole. Petitioner contends that the Governor's decision was not supported by credible evidence under the "some evidence" standard and failed to make individualized considerations of the same factors on which the Board relied in making its decision. Because Petitioner is challenging the actions of a state, the Court will proceed under the Fourteenth Amendment.

The Fourteenth Amendment provides that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. In certain cases, a state law may create a liberty interest protected by the Constitution. In examining questions of procedural due process, federal courts employ a two-step inquiry: 1) whether there exists a liberty or property interest which has been interfered with by the State, Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and 2) whether the procedures attendant upon that deprivation were constitutionally sufficient, Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *receded from and rejected on separate grounds*, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). See Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

Thus, the first question that must be answered is whether there exists a liberty interest protected by the Due Process Clause. The United States Supreme Court has expressly denied entitlement to a protected liberty interest in parole. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). "Nevertheless, early release statutes can create a 'liberty interest protected by due process guarantees.'" Bermudez v. Duenas, 936 F.2d 1064, 1067 (9th Cir.1991) (per curiam), *quoting* Greenholtz, 442 U.S. at 12; Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). Moreover, "[a] state may create a constitutionally protected liberty interest by establishing regulatory measures that impose substantive limitations on the exercise of official discretion." Bermudez, 936 F.2d at 1067, citing Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 844 (9th Cir.1985). However, no protected entitlement to release exists unless

1  a state scheme includes a formula which mandates release after the occurrence of specified events.
2  Baumann, 754 F.2d at 844 (stating that the unique "shall/unless" formula was decisive in Greenholtz).
3  If there exists mandatory language in a parole statute, then Petitioner has a protected liberty interest in
4  parole release. Greenholtz, 442 U.S. at 11-12. If, however, the state merely holds out the possibility of
5  parole, then such a hope is not protected by due process. Id.; Baumann, 754 F.2d at 844. Therefore, the
6  Court must look to the California parole statutes to determine whether the unique structure and language
7  of those statutes creates an entitlement to parole release or a presumption of expectation of parole
8  release.

9  The relevant California statutory language is contained in Cal. Penal Code § 3041, which states,
10  in relevant part:

11  (a) One year prior to the inmate's minimum eligible parole release date a panel of two or more
12  commissioners or deputy commissioners shall again meet with the inmate and *shall normally*
13  *set a parole release date* as provided in Section 3041.5.

14

15  (b) The panel or the board, sitting en banc, *shall set a release date unless it determines* that the
16  gravity of the current convicted offense or offenses, or the timing and gravity of current or past
17  convicted offense or offenses, is such that consideration of the public safety requires a more
18  lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be
19  fixed at this meeting . . . .

20

21  Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).

22  The language in Cal. Penal Code § 3041 provides for the possibility of parole. A release date
23  *shall* be set *unless* the BPT determines that the prisoner should not be released. The word "shall" is not
24  used in an absolute or mandatory sense. Sass, 376 F.Supp.2d at 982. It is qualified or modified in both
25  subsections. Thus, parole is not automatic; it is discretionary. Nevertheless, the Ninth Circuit Court of
26  Appeals, without the assistance of a definitive California Supreme Court interpretation, found the
27  language in § 3041 to be mandatory. See McQuillion v. Duncan, 306 F.3d 895 (9th Cir.2002).
28  In 2005, in In re Dannenberg, 34 Cal.4th 1061, 1087 (2005), the California Supreme Court

provided a definitive interpretation of § 3041's structure and language. In <u>Dannenberg</u>, the California Supreme Court held: 1) the language in § 3041 is not mandatory; 2) there is no right to parole in California; 3) the Board of Prison Terms has extremely broad discretion and is not required to fix a parole date; and 4) the statutory scheme of § 3041 indicates that § 3041(b) extinguishes any expectancy an inmate may have in parole found in § 3041(a). <u>Dannenberg</u>, 34 Cal.4th at 1084, 1087-88, 1097-98.

This Court is therefore faced with conflicting interpretations from the Ninth Circuit and the California Supreme Court.  Normally, the Court would defer to the Ninth Circuit's interpretation of the state statute; however, circuit opinions are only persuasive authority. <u>Clark</u>, 331 F.3d at 1069; <u>Duhaime</u>, 200 F.3d at 600-01. On the other hand, "[w]hen a state court has made its own definitive determination as to the meaning of a state statute, federal courts give this finding great weight in determining the natural effect of a statute, and if it is consistent with the statute's reasonable interpretation, it will be deemed conclusive." <u>Sass</u>, 376 F.Supp.2d at 981-82 , *citing* <u>Gurley v. Rhoden</u>, 421 U.S. 200, 208, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975); <u>see also</u> <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989) (Federal courts are bound by state court rulings on questions of state law). As noted by this Court in <u>Sass</u>, the general principle of deference to state court interpretations is compelled by the Supreme Court's clearly established habeas corpus jurisprudence. <u>See</u>, <u>e.g.</u>, <u>Greenholtz</u>, 422 U.S. at 12, *citing* <u>Bishop v. Wood</u>, 426 U.S. 341, 345, 346 n.10, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (demonstrating deference to, and the need for, holdings and interpretations of state supreme courts when establishing interests protected by due process); <u>Allen</u>, 482 U.S. 369, 377 n.8, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (implying that a Montana Supreme Court decision would have been instructive if there had been one on point).

Therefore, this Court will defer to the California Supreme Court's interpretation of § 3041 in <u>Dannenberg</u>. The California Supreme Court answers the first question: the language of § 3041 is not mandatory. <u>Dannenberg</u>, 34 Cal.4th at 1087-88. The absolute sense of the word "shall" is eviscerated by the modifications ("shall *normally* set") and qualifications ("shall . . . *unless it determines*") contained in the subsection. Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added). Furthermore, "the lack of mandatory language in § 3041, especially when considered in light of 1) California's long standing jurisprudence denying the existence of a parole right, 2) the statutory scheme

1  of § 3041, and 3) the broad discretion given to the BPT under the "noncapital murderers" exception to
2  California's determinant sentencing law, precludes a legitimate expectation of parole release and, thus,
3  does not give rise to an associated liberty interest under clearly established federal law." Sass, 376
4  F.Supp.2d at 982-83, *citing* Dannenberg, 34 Cal.4th at 1084, 1087-88, 1097-98. Therefore, as this Court
5  held in Sass, "the unique structure and language of § 3041 precludes the finding of a federal liberty
6  interest in parole." Sass, 376 F.Supp.2d at 983. Consequently, the Governor's decision was not contrary
7  to or an unreasonable of clearly established federal law. 28 U.S.C. § 2254(d). In addition, because
8  California's parole statutes do not give rise to a protected liberty interest, this Court is without
9  jurisdiction to entertain Petitioner's claims.
10 III.  Review in light of Supreme Court's Analysis in Sandin v. Conner
11      Although Petitioner does not claim a violation of his constitutional rights as determined in
12 Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), this Court is aware that
13 Sandin presents another analysis for assessing whether prisoners have a protected liberty interest.
14 In Sandin, the Supreme Court held that "States may under certain circumstances create liberty interests
15 which are protected by the Due Process Clause." 515 U.S. at 483-84. To determine whether there is a
16 state-created liberty interest, the Court must inquire whether the state action "imposes [an] atypical and
17 significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. As
18 noted by this Court in Sass, however, Sandin "is by no means clearly established in the context of parole
19 rights." Sass, 376 F.Supp.2d at 980. In Sandin, the Supreme Court determined whether a prisoner's
20 rights were violated in the context of his conditions of confinement, not the possibility of his release
21 from that confinement. Sandin, 515 U.S. at 480-81. In addition, Sandin did not overrule Greenholtz or
22 Allen. Id. at 483 n.5. Accordingly, Greenholtz and Allen remain controlling law in the context of
23 determining whether Petitioner has a liberty interest in parole. Indeed, the Supreme Court has cited
24 Greenholtz and Allen approvingly following Sandin as examples of cases where state statutes have
25 created liberty interests through the use of mandatory language. See I.N.S. v. St. Cyr, 533 U.S. 289, 345-
26 46, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).
27      In any case, Petitioner does not have a protected liberty interest even if Sandin were applied. As
28 correctly noted by Respondent, every California prisoner serving an indeterminate prison term is subject

to the statutory maximum term unless the parole authority fixes a shorter term. See Dannenberg, 34 Cal.4th at 1097-98. Therefore, the denial of parole cannot possibly impose an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Consequently, California's parole statutes do not give rise to a protected liberty interest under the Supreme Court's test in Sandin.

Based on the foregoing, IT IS HEREBY RECOMMENDED that this petition for writ of habeas corpus be DISMISSED for lack of subject matter jurisdiction.

These Findings and Recommendation are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 25, 2006**                             **/s/  William M. Wunderlich**
mmkd34                                                UNITED STATES MAGISTRATE JUDGE