IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO MARQUEZ, | CV-F-03-6508 OWW WMW HC |
| Petitioner, | MEMORANDUM OPINION AND ORDER RE PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | ORDER DENYING CERTIFICATE OF APPEALABILITY |
| SCOTT P. RAWERS, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent opposes the petition.

**PROCEDURAL HISTORY**

Petitioner is serving a term of fifteen years to life plus a one-year deadly weapon enhancement, imposed by the Kern County Superior Court following a conviction of second degree murder.  He was sentenced on November 18, 1980.

On October 22, 2002, the California Board of Prison Terms ("the Board") found Petitioner suitable for parole, with an effective date of February 19, 2003.  On review, the Governor reversed the Board's decision on March 21, 2003.

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on May 7,

1  2003, claiming that the Governor's decision was improper because it was not supported by some
2  evidence. The California Supreme Court summarily denied Petitioner's petition with a citation to People
3  v. Duvall, 9 Cal.4th 464, 474 (1995).

4  Petitioner filed the present habeas corpus action on October 29, 2003. On August 8, 2006, the
5  court entered judgment dismissing the petition for lack of subject matter jurisdiction. Petitioner filed
6  a notice of appeal on August 30, 2006. On June 11, 2007, the United States Court of Appeals for the
7  Ninth Circuit entered a judgment, based on a stipulation of the parties to reverse and remand the case
8  to the district court in light of Sass v. California Board of Prison Terms, 461 F.3d 1123 (9th Cir. 2006).

9  On May 4, 2007, Petitioner filed a second petition for writ of habeas corpus in the California
10 Supreme Court, claiming that the Governor's denial of parole for Petitioner constitutes an ex post facto
11 violation. The California Supreme Court summarily denied the petition with a citation to In re
12 Rosenkrantz, 29 Cal. 4th 616, 651-52 (2002)( holding that the fact that the constitutional provision giving
13 the Governor the authority to review the board's parole decisions (Cal. Const., art. V, § 8, subd. (b)) was
14 adopted after the petitioner committed the underlying offense did not make its application to Petitioner
15 a violation of the ex post facto clauses of the state and federal Constitutions).

16 Pursuant to an order of this court, Petitioner filed an amended petition on October 30, 2007.
17 Respondent filed an answer to the amended petition on November 30, 2007, and Petitioner filed a
18 traverse on February 6 and 7, 2008.

19 **LEGAL STANDARD**

20 JURISDICTION

21 Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to
22 the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the
23 United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 120 S.Ct. 1495, 1504
24 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States
25 Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which
26 is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the court has
27 jurisdiction over the action.

28 On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA, thus it is governed by its provisions.[1]

STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123 S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1174

---

[1] The court rejects Petitioner's claim that the AEDPA is inapplicable to the present case challenging a parole decision. See Shelby v. Bartlett, 391 F.3d 1061, 1062 (9th Cir. 2004)(holding that § 2244's one-year limitation period applies to all habeas petitions filed by persons in "custody pursuant to the judgment of a State court," 28 U.S.C. § 2244(d)(1), even if the petition challenges an administrative decision rather than a state court judgment).

3

1  (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

2      While habeas corpus relief is an important instrument to assure that individuals are
3  constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983);
4  Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction
5  is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619,
6  633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed
7  correct, and the federal court must accept all factual findings made by the state court unless the petitioner
8  can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1);
9  Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct.
10 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

11                               **DISCUSSION**

12     Petitioner contends that his federal constitutional rights, including his right to due process, were
13 violated when Governor Gray Davis reversed the Board's decision finding Petitioner eligible for parole.
14 Petitioner contends that the Governor's decision was not supported by credible evidence under the "some
15 evidence" standard and failed to make individualized considerations of the same factors on which the
16 Board relied in making its decision. Petitioner also claims that the Governor's decision constitutes an
17 ex post facto violation. Respondent disputes these contentions.

18 EXHAUSTION

19     Respondent contends that Petitioner has failed to exhaust his state judicial remedies with respect
20 to his claim that the Governor's 2003 parole decision violated his federal right to a parole decision based
21 on some evidence. Respondent admits that Petitioner has exhausted his state judicial remedies with
22 respect to his claim that the Governor's decision constitutes an ex post facto violation.

23     A petitioner who is in state custody and wishes to collaterally challenge his conviction by a
24 petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The
25 exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity
26 to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731, 111
27 S.Ct. 2546, 2554-55 (1991); Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo
28 v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis). Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66, 115 S.Ct. at 888; Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998). For example, if a petitioner wishes to claim that the trial court violated his due process rights "he must say so, not only in federal court but in state court." Duncan, 513 U.S. at 366, 115 S.Ct. at 888. A general appeal to a constitutional guarantee is insufficient to present the "substance" of such a federal claim to a state court. See, Anderson v. Harless, 459 U.S. 4, 7, 103 S.Ct. 276 (1982) (Exhaustion requirement not satisfied circumstance that the "due process ramifications" of an argument might be "self-evident."); Gray v. Netherland, 518 U.S. 152, 162-63, 116 S.Ct. 1074 (1996) ("a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.").

In contending that Petitioner has failed to exhaust his state judicial remedies with respect to his claims that the Governor's 2003 parole decision violated his federal right to a parole decision based on some evidence, Respondent acknowledges that Petitioner raised this claim in his May 2003 petition for writ of habeas corpus to the California Supreme Court. Respondent argues, however, that the court's summary denial of the petition with a citation to Duvall, 9 Cal.4th at 474, indicates that Petitioner has not complied with the exhaustion requirement.

The court agrees with Respondent that a denial of a petition by the California Supreme court with a citation to Duvall indicates that the petition was denied as procedurally deficient in that it failed to state a prima facie case. Id. at 474. A prima facie case, under both California and federal law, is made when the petitioner alleges facts which, if proven, entitle him to relief. Nunes v. Miller, 350 F.2d 1045, 1054 (9th Cir. 2003); Duvall, 9 Cal.4th at 474-75.

Petitioner argues in response to Respondent's contention that he did everything he was required to do under both state and federal law to present his claim to the state court; and that the state court erred in finding that he did not state a prima facie case. He claims that the fact that the state court made this allegedly improper finding does not necessarily mean that his claim is unexhausted. The court agrees with this claim. In Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003), the Ninth Circuit held that when a state court denies a petition for failure to make a prima facie case, the question for the federal court is whether the state court was objectively unreasonable in concluding that the claim presented, the allegations made and the facts tendered, assuming they are true, do not establish a prima facie case for relief.

Here, Petitioner argues that there was no evidence to support the Governor's findings that the crime was aggravated, that his accounts were inconsistent or that he was a risk to public safety. In his petition to the California Supreme Court, Petitioner alleged various facts which he claimed showed support for the Board's decision to grant him parole and that the Governor was mistaken in reversing that decision.

The Governor's decision to reverse the Board's finding that Petitioner was suitable for parole was based on Petitioner's commitment offense and his lack of insight. The Governor found the Board had the not given adequate consideration to Petitioner's offense, stating in part as follows:

> Mr. Marquez committed a heinous crime. The degree of violence and viciousness that he displayed when he plunged a knife six times into his wife's body, puncturing her aorta and both her lungs, is particularly egregious. He not only attacked his wife, but he assaulted, and could have also killed, her brother as well. In fact, Mr. Marquez admits he intended to kill Mr. Gomez.
>
> While Mrs. Marquez lay bleeding in the hallway, Mr. Marquez continued to abuse her. He threw the knife at her. He then left the house, only to return again to thrown a lawn chair at her body. The degree of violence, viciousness and exceptionally callous disregard for human suffering exhibited by Mr. Marquez weighs against parole. . . .
>
> The Board of Prison Terms relied on Mr. Marquez's acceptance of responsibility as a factor in finding him suitable for parole. I disagree. The record shows that Mr. Marquez continues to avoid accepting full responsibility for his wife's death. Although he admits stabbing her, he has told several different versions of the crime, all seeking to minimize his culpability. When he originally surrendered to police, he claimed to have caught his wife with a "boyfriend." He later attempted to put the blame on the fatal stab wound on Mr. Gomez. While he has been incarcerated, Mr. Marquez has given several other versions as well. At various times he has asserted that during the knife fight, his wife intervened and was accidentally stabbed; that, although he may have stabbed her once or twice, Mr. Gomez was responsible for one or more of the wounds; and that he tried to help his wife, but Mr. Gomez chased him out of the house. Mr. Marquez has also claimed that he went to the house with the intent to kill Mr. Gomez. Presently,

> he continues to claim that during the struggle between himself and Mr. Gomez, he must have inadvertently stabbed his wife when she surprised him from behind. When asked during the October 2002 hearing about the numerous versions of the murder, and why his wife had six stab wounds, Mr. Marquez admitted he could not explain it. Mr. Marquez's continued avoidance of the truth demonstrates his failure to accept responsibility.
>
> Based on each of the negative factors discussed above, in addition to other evidence contained in the file, I believe Mr. Marquez continues to pose an unreasonable danger to society at this time. In light of the particularly egregious nature of his crime, and in consideration of public safety, I believe he requires further incarceration and therefore I REVERSE the Board of Prison Terms' decision to parole Mr. Marquez.

After reviewing Petitioner's state court petition and the above reasoning by the Governor, this court finds that the state court was not objectively unreasonable in concluding that Petitioner failed to state a prima facie case for his claim that the Governor's decision did not comply with the "some evidence" standard. In his state court petition, Petitioner simply presented evidence which he felt supported the Board's decision. He did not present facts which, if true, showed there was no evidence to support the Governor's decision. Clearly, under the Governor's reasoning quoted above, there was such evidence. Accordingly, the court finds that Petitioner's claim that the Governor's decision violated his right to a parole decision support by some evidence is not exhausted. See Coleman v. Thompson, 501 U.S. 722, 732 (1991)("A habeas petitioner who has failed to meet the state's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance."); Harris v. Superior Court, 500 F.2d 1124 (9th Cir. 1974)(a claim denied by the California Supreme Court as procedurally deficient is unexhausted).

Under the AEDPA, exhaustion can be waived by the respondent. 28 U.S.C. § 2254(b)(C). The court can also excuse exhaustion if "(I) there is an absence of available State corrective process; or (ii) circumstances exist that render such a process ineffective to protect the rights of the application." 28 U.S.C. § 2254(b)(1)(B). In this case, Respondent has not waived exhaustion. In addition, California provides avenues for Petitioner to pursue state claims. For example, these claims may be presented in a petition for writ of habeas corpus. See Cal. Penal Code §§ 1473 - 14758. Finally, there are not sufficient circumstances in this case for the court to ignore the United States Supreme Court's admonishment that comity demands exhaustion and find that California's corrective processes are ineffective to protect Petitioner's rights.

//

Timeliness

Respondent contends that Petitioner's claim that the Governor's decision constitutes an ex post facto violation is untimely under 28 U.S.C. § 2244(d). Petitioner disputes this contention.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, Section 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In this case, there is no dispute that Petitioner's initial petition filed in this court on October 28, 2003, is timely, as it was filed less than one year following the Governor's reversal of the Board's grant of parole. The initial petition, however, did not include the claim that the Governor's action violated the ex post facto clause. Petitioner exhausted that claim after the initial petition was filed and then was granted permission by this court to file an amended petition which contained the claim. The amended petition was not filed within the one-year limitations period set forth in the AEDPA. Thus, the parties agree that the ex post facto claim is timely only if it relates back to the filing of the initial pleading.

Rule 15(c), Federal Rules of Civil Procedure, provides in part that an amendment of a pleading relates back to the date of the original pleading when "(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."

1       In <u>Mayle v. Felix</u>, 545 U.S. 644, 650 (2005), the Court addressed the same issue of whether an amended petition filed after the expiration of the statute of limitations period related back to the original petition.  In the original petition, the petitioner brought a confrontation clause claim regarding the admission in his murder trial of videotaped testimony of a witness for the prosecution.  In the amended petition, the petitioner sought to challenge the admission of inculpatory statements he made during pretrial police interrogation under the privilege against self-incrimination.  Thus, his two claims both involved the admission of out-of-court statements during the prosecution's case in chief.  The petitioner argued that the two claims arose out of the same "conduct, transaction or occurrence," because they both arose out of the same criminal conviction.  The United States Supreme Court rejected this claim, finding that the new, second ground for relief arose out of facts different in both time and type from those set forth in the original pleading.

        In this case, Respondent contends Petitioner's ex post facto claim does not relate back to the original petition and is therefore untimely.  Respondent argues that Petitioner's original petition does not contain the facts necessary to allege an ex post facto claim.  Respondent relies on the fact that part of Petitioner's ex post facto claim is his allegations that the law providing for the Governor's review was enacted after his conviction, and that law has impermissibly increased his punishment.  Respondent argues that these allegations are different in both time and type from the allegations in support of Petitioner's due process claim, and argues that the fact that both the due process and the ex post facto claims arise from the same proceeding are not enough to trigger the application of the relation back doctrine.

        Petitioner claims that his ex post facto claim is timely because it relates back to the filing of his original petition.  He argues that the only fact or occurrence he challenges is the Governor's action in reversing the Board's grant of parole.  He claims that in his amended petition he has added a new legal theory in support of that challenge, but has not expanded his challenge to cover an additional occurrence.

        The court finds that Petitioner's argument has merit. As he argues, unlike the situation in <u>Mayle v. Felix</u>, he challenges one action (the denial of parole) taken by one actor (the Governor).  Further, unlike in <u>Mayle v. Felix</u>, Petitioner's claims do not involve a completely different set of facts.  The court finds this case to be more similar to <u>Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau,Inc.</u>, 690 F.2d

9

1240 (9th Cir. 1982), cited by Petitioner. In that case, relation back was found where original challenge was to sham protests as a restraint of trade based on pattern or practice, and the amended challenge added fraud charge as an additional challenge to the sham protests. The court therefore finds that Petitioner's second claim relates back to the filing of his original petition.

Accordingly, based on the foregoing, the court rejects Respondent's claim that Petitioner's ex post facto claim is untimely for failure to relate back to the Petitioner's original petition.

Merits of Ex Post Facto Claim

Respondent contends that even if Petitioner's ex post facto claim is considered to be timely, it was properly denied by the state court. Respondent relies on Johnson v. Gomez, 92 F.3d 964 (9th Cir. 1996), in which the court found that the amendment to the California Constitution giving the Governor the authority to reverse the Board's decision to allow or deny parole to persons sentenced to indeterminate terms of imprisonment upon conviction of murder did not violate the ex post facto law. In that case, at the time of Johnson's conviction California law provided that the Board, acting as both a panel and a review committee, had sole responsibility for deciding whether incarcerated defendants were suitable for parole. Id. at 965. Then, in 1988, California voters approved Proposition 89, which added Section 8(b) to Article V of the California Constitution to provide for review by the Governor. This is the same provision challenged by Petitioner.

Johnson was found suitable for parole by a Board panel on August 19, 1991. The Board Decision Review Committee affirmed the decision, but under the new law, Johnson was not eligible for immediate release. Under Section 8(b), his release was conditioned upon the expiration of the thirty-day gubernatorial review period. The Governor of California exercised his review power on October 18, 1991, and reversed the Board's decision.

Johnson filed a petition for writ of habeas corpus and the district court denied the writ, finding no ex post facto violation. Johnson v. Gomez, 876 F.Supp. 226 (E.D. Cal. 1995). On appeal, the Ninth Circuit reviewed Supreme Court precedent, ending with California Department of Corrections v. Morales, 514 U.S. 499, 115 S.Ct. 1597 (1995). In Morales, the issue was a change in the law to provide one class of petitioners with fewer parole hearings. The petitioner in Morales had never been granted parole under the old law. The Court rejected the petitioner's ex post facto claim on the ground that he could not prove

that the change in parole procedures created more than a speculative risk of increasing his punishment. Id. at 115 S.Ct. at 1603.

After reviewing the Morales decision, the Ninth Circuit in Johnson found that, "[i]n this case, Johnson is similarly unable to demonstrate that an increase in his punishment actually occurred, because, like the petitioner in Morales, he had not been granted parole under the old law. Johnson, 92 F.3d at 967. "Here, because the BPT's parole decision is not final until after the expiration of the thirty-day gubernatorial review period, it cannot be said with certainty that the BPT would have granted Johnson parole had it possessed the final review authority." Id. The Ninth Circuit thus concluded that, "the application of Proposition 89 to authorize the governor's review of Johnson's grant of parole did not violate the Ex Post Facto Clause." Id.

Petitioner contends that Johnson is no longer good law, as it enunciated an incorrect standard of review. Petitioner claims that Johnson required a prisoner complaining of an ex post facto violation to provide "a mathamatical certainty" and "with assuarance" that he would have received parole under the old system. This is an inaccurate reading of the holding in Johnson. The language Petitioner relies on is contained within a paragraph following the court's conclusion that "the application of Proposition 89 to authorize the governor's review of Johnson's grant of parole did not violate the Ex Post Facto Clause." Johnson, 92 F.3d at 967. The court went onto discuss Nulph v. Faatz, 27 F.3d 451 (9th Cir. 1994), as a case that supported its conclusion, not as a case that directed its conclusion. The court stated,

> We recognized that there could well be other prisoners for whom the law change did not operate adversely and for whom it should be applied retroactively. In Nulph, however, the sentence increase for a certain class of prisoners was a mathematical certainty. Id. In order for Johnson to demonstrate a similar, inevitable increase in his sentence, he would have to show "with assurance", to use the Dobbert language, quoted in Nulph, that he would have received parole under the old system. This Johnson simply cannot do.

Johnson, 92 F.3d at 968. This court finds that contrary to Petitioner's contention, this language does not enunciate a new standard for proving an ex post facto violation. The court finds, therefore, that under the controlling Ninth Circuit authority in Johnson, Petitioner's ex post facto claim is without merit. The court thus concludes that Petitioner has failed to carry his burden of demonstrating that the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;"

11

or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). This claim presents no basis for habeas corpus relief and will be denied.

The Court must dismiss a petition that contains unexhausted claims. <u>Rose</u>, 455 U.S. at 521-22, 102 S.Ct. at 1205; <u>Calderon v. United States Dist. Court (Gordon)</u>, 107 F.3d 756, 760 (9th Cir. 1997) (en banc) *cert. denied*, 118 S.Ct. 265 (1997); <u>Guizar v. Estelle</u>, 843 F.2d 371, 372 (9th Cir.1988). With the denial of Petitioner's ex post facto claim, only his first, unexhausted claim remains. Accordingly, this case must be dismissed.

Petitioner may seek to appeal from the judgment of the court in this case. Petitioner cannot proceed on such an appeal absent a certificate of appealability. The controlling statute, 28 U.S.C. § 2253, provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
> (B) the final order in a proceeding under section 2255.
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In the present case, the court finds no denial of a constitutional right. Accordingly, a certificate of appealability will be denied.

Based on the foregoing, IT IS HEREBY ORDERED as follows:

1) Petitioner's second claim based on an ex post facto violation is DENIED;

2) This petition for writ of habeas corpus is DISMISSED as containing only one, unexhausted claim;

3) A certificate of appealability is DENIED; and

12

4)      The Clerk of the Court is directed to enter judgment for Respondent and to close this case.

IT IS SO ORDERED.

**Dated:   March 14, 2008**                              /s/ Oliver W. Wanger
                                                  UNITED STATES DISTRICT JUDGE